UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL THOMAS,

    Petitioner,

v.

MATT MACAULEY, *Warden*,

    Respondent.

Case No. 20-12160
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1] AND DENYING CERTIFICATE OF APPEALABILITY**

On a snowy Detroit day in March 2017, Michael Thomas attempted to steal two vehicles being driven slowly down an icy road. The occupants of one of the cars fought back and Thomas injured him with a box cutter. Following a jury trial in Wayne County Circuit Court, Thomas was convicted of assault with intent to commit great bodily harm less than murder in violation of Michigan Compiled Laws § 750.84, and malicious destruction of personal property in violation of Michigan Compiled Laws § 750.377a(1)(c)(*i*). He was ultimately sentenced to 25 to 35 years' imprisonment. His convictions were upheld on appeal.

Thomas has now filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He claims that his defense counsel provided ineffective assistance by (1) failing to seek a mistrial after a portion of his custodial interrogation was shown to the jury and (2) failing to admit his medical records. These claims were rejected by

the state appellate courts, and neither has merit. Thus, the Court denies the petition and declines to issue a certificate of appealability.

## I. Background

The following facts as recited by the Michigan Court of Appeals are presumed correct on habeas review. *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)).

> This case arises from two incidents that occurred on March 13, 2017, in the area of Rosemont Avenue and Chalfonte Street in Detroit, Michigan. In the early afternoon, Lisa Candie drove on Rosemont Avenue and found cars parked on her left and defendant's SUV parked at an angle in the street on her right requiring her to proceed slowly. As she drove by the SUV, defendant jumped out of the rear driver's side door and ran to Candie's door with a four-way tire iron in his hand yelling something. Defendant hit her windshield multiple times with the tire iron damaging her windshield and putting a hole in it. Defendant tried to open Candie's door causing her to scream. Despite the snowy, slippery road conditions, Candie escaped and drove to her parents' house on Rosemont Avenue. When she drove away, defendant's open truck door damaged the passenger side of her car.
>
> That same afternoon, Michael Wynn drove down Rosemont Avenue with his 78-year-old mother and approached a stop sign when the back door of defendant's parked SUV opened and knocked off his passenger side mirror. Wynn stopped, exited his vehicle, left it running with the door open, and approached the SUV. Defendant left the back seat of the SUV with a tire iron, bypassed Wynn who remarked that he broke his mirror. Defendant walked over to Wynn's vehicle with Wynn following asking him if he heard him say that he knocked the mirror off of his vehicle. Defendant got into the driver's seat of Wynn's car. Wynn jumped on top of defendant and they started to struggle for control of the vehicle. Wynn tried to get defendant out of his vehicle. Defendant put the vehicle in drive and drove it into garbage cans and up onto the curb while Wynn scuffled with him. Defendant then cut Wynn on his chin, twice on his left hand, and on the back of his right shoulder with a box cutter. Wynn gained

2

control of the vehicle and put it into park. Wynn's mother punched defendant in the face and Wynn struggled to get defendant out of his car. Wynn bit defendant's hand causing him to drop the box cutter on the seat. Wynn retrieved it and used it on defendant as he went out the passenger side door. Once out, defendant walked away. Meanwhile, Wynn bled profusely, his mother screamed for help and for someone to call the police, 911, and an ambulance. An ambulance arrived and took Wynn to Sinai Grace Hospital.

Defendant described the two incidents differently. He testified that his SUV broke down and when he sought assistance from Candie he slipped and accidently hit her windshield with his tire iron. After she left, he returned to his truck and he fell asleep until he awoke after hearing a bump from Wynn's car hitting his mirror. Wynn approached him yelling, and he and Wynn tussled at the rear of Wynn's vehicle and ended up by Wynn's driver's door whereupon they both fell and somehow defendant ended up inside Wynn's car door well. Both men ended up in the driver's seat where Wynn held defendant down. Defendant testified that Wynn cut him with a box cutter on his arms and legs. Defendant somehow took the box cutter. Defendant denied using the box cutter to cut Wynn. He surmised that Wynn cut himself while trying to cut defendant. Defendant exited the car and walked to a nearby gas station where Wynn and a group of people accosted him and inflicted injuries upon him when he exited the gas station. The police arrived and took defendant into custody and took him to the hospital where he received treatment and medication before being released. In his discussions with hospital staff, defendant denied he had taken any drugs but at trial admitted that he used cocaine and had a few drinks.

The day after the incidents, police officers interviewed defendant and video recorded the interview. Defendant testified that the cocaine and alcohol combined with the medication he received at the hospital made him disoriented when he talked with the police. He stated that he had a hangover.

*People v. Thomas*, No. 340545, 2019 WL 3941486, at *1–2 (Mich. Ct. App. Aug. 20, 2019)

The jury found Thomas guilty of assault with intent to do great bodily harm less than murder and malicious destruction of property. *Id.* He was sentenced to 25

3

to 40 years for the assault conviction and six months to one year for malicious destruction of property. *Id.*

Thomas appealed, raising the same ineffective assistance of counsel claims raised in this petition, as well as an additional sentencing claim. The Michigan Court of Appeals remanded for further consideration of Thomas' sentencing claim only. (ECF No. 6-9, PageID.626.) On remand, the trial court resentenced Thomas to 25 to 35 years for the assault conviction. *Thomas*, 2019 WL 394486 at *1. The sentence for malicious destruction of property remained unchanged. *Id.* The Michigan Court of Appeals affirmed Thomas' conviction. *Id.* Thomas filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Thomas*, 935 N.W.2d 337, 337 (Mich. 2019).

Thomas then filed this habeas petition. He raises the same two ineffective assistance of counsel claims that were denied by the Michigan Court of Appeals: (1) counsel's failure to move for a mistrial when the prosecutor began to play the suppressed interrogation video, and (2) counsel's failure to obtain and use Thomas' medical records from his own treatment at Sinai Grace Hospital. Respondent opposes the petition. (ECF No. 8.)

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86,

4

103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). So to obtain relief in federal court, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101. And a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), with review being "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). But if the state courts did not adjudicate a claim "on the merits," "AEDPA . . . does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

### III. Analysis

The Court addresses Thomas' two claims of ineffective assistance of counsel under the familiar standard announced in *Strickland v Washington*, 466 U.S. 668 (1984). Thomas must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *See id.* at 687. Just as important, "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105

(internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### A. Video of Police Interview

The Court begins with Thomas' challenge to his counsel's failure to seek a mistrial after a portion of his custodial interrogation was shown to the jury.

Thomas was interviewed by police the day after he was arrested. *See People v. Thomas*, No. 340545, 2019 WL 3941486, at *2 (Mich. Ct. App. Aug. 20, 2019). His trial counsel moved to suppress the video recording of the interview because Thomas' intoxication rendered his *Miranda* waiver involuntary and unknowing. *Id.* The trial court agreed. It held that Thomas' statement was "*Miranda* defective" and, therefore, could not be presented in the prosecution's case in chief, but could be used for impeachment purposes if Thomas testified in his own defense. *Id.* Thus, after Thomas testified and the defense rested, the prosecution called as a rebuttal witness Sergeant Robert Wellman, the police officer who questioned Thomas during the video-taped interview. *Id.* The prosecution then played the video for approximately nine minutes until the trial court *sua sponte* stopped it. *Id.*

Outside the presence of the jury, the trial court reminded the prosecutor that the video could only be used to impeach during cross-examination of Thomas and, therefore, the evidence would be stricken. *Id.* When the jury returned, the trial court gave the following instruction:

6

> Jury, with regard to what's just been played to you, that's all being stricken from the record. And you're to disregard what just took place here with regard to the witness and with regard to the tape.
>
> All right. That's all being stricken from the record. So do not rely upon that when you make your decision.

(ECF No. 6-7, PageID.538–539.)

During the final jury instructions, the court also instructed that jurors must not consider excluded evidence or stricken testimony in deciding the case. (*Id.* at PageID.573.)

Thomas believes the trial court's curative instructions were inadequate and that his trial counsel was ineffective for not seeking a mistrial after the video was played. Allowing the jury to become aware of his extreme intoxication, says Thomas, caused them to believe the victims' versions over his. (ECF No. 1, PageID.28.) The Michigan Court of Appeals rejected this ineffective-assistance claim on the merits. It found:

> Although defendant asserts that defense counsel should have moved for a mistrial, he fails to explain how not doing so prejudiced him and impaired his ability to get a fair trial. The record reflects that the trial court stopped the prosecution's examination of Sergeant Wellman, struck his testimony from the record and the video evidence presented during his testimony. The trial court then instructed the jury of its decision and ordered them to not consider that evidence for their determination whether defendant committed the charged offenses. The trial court issued a further curative instruction at defense counsel's request and during the trial court's final instructions to the jury told them that they could only consider properly admitted evidence and could not consider excluded or stricken evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v. Abraham*, 256 Mich. App. 265, 279; 662 N.W.2d 836 (2003). Defendant has not presented anything that establishes that the trial court's instructions failed to cure the situation presented in this case and prevented him from receiving a fair trial. Therefore, we are not

7

> persuaded that the circumstances presented in this case had a prejudicial effect so severe that it was not cured by the instructions the trial court appropriately issued. Because the trial court's instructions removed any prejudice to defendant resulting from the playing of the video, a motion for a mistrial would have been futile. Defense counsel was not ineffective for failing to make such a futile motion. *People v. Fike*, 228 Mich. App. 178, 182; 577 N.W.2d 903 (1998). Accordingly, defendant has failed to establish that defense counsel's performance fell below an objective standard of reasonableness and that his counsel provided him ineffective assistance in this regard.

*Thomas*, 2019 WL 3941486, at *4.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, *Strickland*. The Court presumes that a jury will follow "an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, *Richardson v. Marsh*, 481 U.S. 200, 208 (1987), and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant, *Bruton v. United States*, 391 U.S. 123, 136 (1968)." *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987). Thomas provides no reason to conclude that there is an overwhelming probability that the jury could not or did not heed the trial court's instructions.

Nor has he shown a likelihood that the evidence was "devastating" to his defense. Indeed, evidence that Thomas was highly intoxicated when interviewed by police was consistent with Thomas' own trial testimony. Thomas testified that he did not have a clear recollection of what occurred on March 13, 2017, because he had been using cocaine (ECF No. 6-7, PageID.455, 524), and also admitted that he had had "a few drinks." (*Id.* at PageID.480.) He further testified that he had no clear recollection of the police interview because he was "disoriented" and "really wasn't to[o] aware of

8

what was going on that day. Between the medication they had gave me [at the hospital] and the drugs I had used." (*Id.*)

In sum, the trial court struck the evidence of the videotape, gave a curative instruction to disregard it promptly after the tape was played, and instructed the jury again at the end of the trial to disregard stricken evidence. Thomas provides no reason to believe the jury disregarded the court's instructions. Seeing his intoxicated state was by no means the only explanation for why the jury might have believed the other witnesses' version of events over his. And, as mentioned, evidence that he was intoxicated during the interview was consistent with his own testimony. Considering these circumstances, counsel may have reasonably concluded, as the Michigan Court of Appeals did, that a motion for mistrial would have been futile. Thus, with no deficient performance or prejudice, Thomas has failed to show that the state court's denial of this claim was contrary to, or an unreasonable application of *Strickland*. Habeas relief is denied for this claim.

### B. Medical Records

Next, Thomas argues that defense counsel was ineffective for failing to obtain and use his medical records from Sinai Grace Hospital, where he was treated after his physical altercation with one of the victims.

The Michigan Court of Appeals addressed this claim on the merits as well. It held that Thomas failed to develop the factual predicate for his claim because he did "not describe[] the content of the medical records or explain[] how they would have been beneficial to his case or assisted in his defense." *Thomas*, 2019 WL 3941486 at

9

*4. The medical records, noted the appellate court, also contained statements Thomas made to medical personnel which contradicted Thomas' trial testimony. *Id.* Indeed, "[t]he prosecution challenged the veracity of defendant's testimony and questioned him regarding his statements reported in those records to establish during cross-examination that defendant lied to medical personnel about his drug and alcohol use." *Id.* Thus, the state court further held that defense counsel's strategy not to introduce into evidence medical records containing inconsistent testimony was consistent with a reasonable trial strategy. *Id.* There is nothing unreasonable about this finding.

First, Thomas has still not explained why the medical records would have been beneficial to his defense. It was not disputed that he fought with one of the victims and suffered injuries of his own. Second, Thomas' claim is factually inaccurate. His counsel did not fail to obtain the medical records. He had them in his possession and used them at trial to refresh Thomas' recollection when he testified about the injuries he suffered. (ECF No. 6-7, PageID.66–67.) True, counsel did not move to admit the records as evidence, but given the issues with them, Thomas fails to explain how this rendered counsel deficient or how it prejudiced the defense. And finally, a conclusory or speculative argument that counsel should have done more with no supporting evidence or offer of proof is insufficient to warrant habeas relief. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 335–36 (6th Cir. 2012) ("[C]onclusory and perfunctory . . . claims of [ineffective assistance of counsel] are insufficient to overcome the presumption of reasonable professional assistance and are insufficient to warrant habeas relief.").

Thomas' conclusory claims are insufficient to overcome the doubly-deferential standard owed to the state court's decision on habeas review.

## IV.

For these reasons, the Court DENIES Thomas' petition for a writ of habeas corpus. The Court further finds that reasonable jurists would not debate this Court's resolution of Thomas' claims, so the Court DENIES a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). If Thomas nonetheless chooses to appeal, he may proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3).

SO ORDERED.

Dated: August 23, 2023

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE